GEORGE W. BROOME, Respondent, *v.* GEORGE C. WRIGHT,
Appellant.

April 29, 1884.

1. ORAL CONTRACTS. — The minds of the parties having met upon a contract, a failure to reduce it to writing may be immaterial, it not being understood that a reduction to writing is necessary to make it binding.

2. —— PRACTICE. — A verdict of a jury upon the question as to whether the minds of the parties met upon the contract will not be disturbed on appeal where the testimony is contradictory.

3. —— EVIDENCE. — The exclusion of evidence by the trial court is not ground for a reversal of the judgment, on appeal, where it is evident that such rejection could not have prejudiced the appellant.

4. —— MISCONDUCT OF JUROR. — Alleged misconduct of a juror is not ground for a reversal of the judgment, on appeal, where the appellant had full notice of it at the time and interposed no objection.

APPEAL from the St. Louis Circuit Court, ADAMS, J.
*Affirmed.*

E. A. B. GARESCHÉ, for the appellant.

KRUM & JONAS, for the respondent.

BAKEWELL, J., delivered the opinion of the court.

This was replevin for the possession of two mares. Plaintiff gave bond on commencing the action, and the animals were delivered to him under the usual delivery order. There was a verdict for plaintiff, and judgment that he retain possession and recover his costs.

The animals in question were both thoroughbred; one of them had some reputation on the turf, the other was under two years, and had never been ·trained. The testimony of plaintiff is to the following effect: In November, 1882, plaintiff owned both of the mares. One of them was in Randolph County, and the other at Mr. Hunt's racing stables at the Cote Brilliante track in St. Louis. At that time, defendant suggested to plaintiff that he would like to winter the mares at his farm in St. Louis County and train

them for the coming season. Plaintiff and defendant talked the matter over at Mr. Hunt's office, in the presence of Hunt and his clerk, Zeibig. Plaintiff swears that they agreed that defendant was to take charge of the mares. Plaintiff was to deliver the black mare to defendant at Pacific Station, and defendant was to take the other mare from Hunt's stable. Defendant was to winter the animals at his farm as becomes race horses : he was to handle them, give them exercise, see to them, keep them warm, and superintend their treatment by a man who was to have constant charge of them ; they were not to be left out to injure themselves. In consideration of this care and attention, and that defendant was to bear all the expense of wintering and training them, defendant was to have a one-half interest in the mares, and plaintiff to have a certain percentage of their winnings and increase ; but, if defendant failed to give the animals the proper care due to first-class race horses, he was to forfeit all interest in the animals, and the entire property in them was to revert to plaintiff. The details of the agreement were not settled ; the agreement was to be reduced to writing, and all matters of detail were to be then arranged. Defendant then took the younger mare from Hunt's stables to his farm, and plaintiff delivered the black mare to defendant at Pacific Station. Defendant put plaintiff off, from time to time, about the written agreement, and said that Zeibig would attend to it, and he neglected to execute the agreement in writing and finally refused to do so. Then, on the 3d of January, 1883, plaintiff reduced the agreement to writing, according to his understanding of its terms, and took it to Hunt's office, where defendant and plaintiff usually met, and left it with Zeibig. A month afterwards, Zeibig returned this writing to plaintiff, with the statement that defendant would not sign any such thing as that. After that, defendant seemed to avoid plaintiff. Plaintiff left word with Zeibig

that he insisted upon the completion of the contract, and wrote to defendant several letters on the subject; but could not get from defendant any statement of his reasons for refusing to execute the written agreement.    Plaintiff saw the mares in February, at Cote Brilliante, in the hands of a trainer.    They were then both in poor condition, and had the appearance of having been insufficiently fed and cared for during the winter.    Plaintiff then ascertained the charges and expenses to which defendant had been put about the animals whilst in his charge, including a reasonable amount for wintering them, and tendered this amount to defendant, and demanded possession of the animals.    Defendant refused to receive the money or deliver up the mares, whereupon this action was brought.

Defendant introduced witnesses whose testimony tended to show that the understanding as to the horses was not that stated by plaintiff, that they were well attended to during the winter, and whose testimony contradicted that of plaintiff in many important particulars.    There was also testimony on behalf of defendant tending to show that plaintiff and defendant fully agreed as to the terms of their bargain at the meeting in Hunt's office, and that nothing remained to be done but to reduce it to writing.    There was a great deal of testimony as to the value of the mares, which was variously estimated at from $2,000 to $25,000. The witnesses, with the exception of Zeibig, were all men connected with the turf as trainers or owners of running horses, or as men in the habit of betting upon races.

The case was submitted to the jury on the following instructions, of which the first two were given at the instance of plaintiff, and the others at the defendant's instance.

1.  "If the jury believe from the evidence that, at the time when plaintiff demanded the return of the horses (if they find he made such a demand), the defendant refused to deliver them on the ground alone that he had an interest in them and in his supposed contract, then plaintiff was not

obliged to even tender expenses and pay for keep to defendant before bringing suit.

2. "The court instructs the jury that, when a verbal agreement is assented to, which it is understood between the parties is to be put in writing before the same is to take effect, such an agreement is not binding until it is put in that form; hence if the jury believe from the evidence that, at any time before the delivery of the animals sued for, to the defendant, it was agreed or understood between the parties as a part of the contract between them relative to the horses in controversy, that the arrangement in regard to such animals should be reduced to writing before the same should go into effect, and that such writing was never in fact executed by both of the parties, then the arrangement testified to by the witnesses constitutes no defence to this action.

3. "The court instructs the jury that, if they believe and find the facts to be as stated in instruction No. 5, and that the terms of the contract therein referred to were fully understood and agreed to between plaintiff and defendant, and if, only afterwards, and for the purpose of preserving evidence thereof, it was agreed and understood between the parties that the terms of their contract should be reduced to writing and signed by them, the failure to draw such contract and have it signed by the parties will not invalidate the contract, and plaintiff is not entitled to recover by reason of such failure.

4. "The court instructs the jury that, if they find for defendant, they will also find the actual market value of the property in controversy at the date of the institution of this suit.

5. "The court instructs the jury that, that if they believe from the evidence that plaintiff agreed with defendant to give him a half interest in the property in controversy if he, defendant, would pay all expenses of wintering, keeping, and training; and that plaintiff, in pursuance of such

agreement, and for the purpose of carrying it into effect, subsequently delivered the property in dispute to defendant, and defendant did pay all expenses of wintering, keeping, and training, they will find for defendant."

The defendant asked the following instructions, which were refused : —

" The court instructs the jury that, if they believe from the evidence that there was a contract between plaintiff and defendant in relation to the property in controversy, and that the terms thereof were fully understood and agreed to between them, and a third person was instructed to draw up a written contract in accordance therewith, the failure to draw such contract and have it signed by the parties will not invalidate the contract, and defendant is entitled to recover thereon.

" The court instructs the jury that, under the evidence, plaintiff is not entitled to recover, and they will find for defendant."

1. If nothing remain but to reduce the contract to writing, and there is no understanding that it is not to be binding until written out, it may be immaterial that this has not been done, when all the terms are agreed to, and the minds of the parties have met *ad idem*. The testimony in the present case was contradictory as to whether there had been such a meeting of minds. The question was put to the jury on instructions of which appellant has no reason to complain. The jury were the judges of the credibility of the witnesses and the weight of the evidence. The trial court refused to disturb the verdict, and we can not do so without violating the established rule that, where there is substantial evidence to support a finding of facts in a law case, the appellate court will not disturb the verdict as against the weight of the evidence.

2. The instructions refused, were properly refused. The first of them contained nothing not embraced in those given. The court properly refused to take the case from

the jury, as appears from what has been said as to the testimony for plaintiff.

3. Plaintiff offered and read in evidence the agreement which he had prepared and which defendant refused to sign. Afterwards, when defendant offered to explain wherein this paper differed from the agreement he had made when he took the horses, the court refused to allow him to do so, on the ground that the contract was offered in evidence only to show that it was not executed. This paper is not set out in the bill of exceptions. We can not see that its introduction under the circumstances could in any way prejudice defendant. It was not introduced to show any agreement, but to show that there had been none. It was competent for defendant to show that this agreement substantially differed from the agreement under which he took the horses, but the details of this difference were of no importance, and the court committed no error in excluding them. Defendant was allowed to go into this matter so far as to show that he declined to sign the paper tendered to him, because it did not set out the agreement between the parties as he understood it, and he and his witnesses stated without objection what, according to his recollection, that agreement was. These rulings as to evidence furnish, therefore, no ground for reversing the judgment.

4. In support of his motion for a new trial, defendant filed affidavits to the effect that one juror, during the whole progress of the trial, paid no attention to the witnesses, but occupied himself with reading newspapers. The trial judge and counsel had every opportunity of observing the conduct of this juror. It appears that neither court nor counsel interposed during the trial, and it is too late, after a verdict, for the losing party, to claim a mistrial on the ground of misconduct of a juror of which he had notice when the cause was submitted.

5. There is nothing whatever in the objection that the verdict is insufficient. It appears from the return of the

sheriff, which is part of the record, that the property was delivered by the sheriff to the plaintiff. The presumption is that he retained it.

The judgment is affirmed. All the judges concur.