HUDSON et al., Respondents, v. RODGERS, Appellant.

St. Louis Court of Appeals, December 11, 1906.

1. CONTRACTS: Parol Contract Afterwards Reduced to Writing: Intention.   Where parties agreed orally upon the terms of a contract and with the understanding that it should afterwards be put in writing, the contract was an oral one and became effective from the time of the agreement and the writing was unnecessary to make it effective.

2. ———: ———: ———: Evidence.   Where an oral agreement was entered into with an understanding that it should be put in writing and one of the parties subsequently wrote a letter to the other giving in detail the terms of the contract, as understood by the writer, which letter was never replied to by the other party, the letter was admissible in evidence in an action for services rendered under the contract as bearing upon the issue as to what the terms of the contract were.

3. ———: **Substantial Compliance: Quantum Meruit: Waiver.**
Where a firm of architects was employed under a contract to
prepare plans and specifications for a building, they could not
recover in *quantum meruit* for the work done on the plans and
specifications unless they performed substantially the contract
as made, or unless there was a waiver of a deviation from the
contract by the other party.

4. ———: ———: ———: ———: **Commentary on Evidence.** In
an action on such a contract, where there was an issue as to
whether it was substantially performed or deviated from, it
was error in an instruction to predicate a waiver of sub-
stantial performance upon some inconclusive fact indicating
a waiver.

5. ———: ———: ———. In such an action the plaintiff could
not recover in *quantum meruit* for making plans which deviated
from the contract by showing that he was ready to make them
conform to the contract.

Appeal from St. Louis City Circuit Court.—*Hon. Matt.
G. Reynolds,* Judge.

REVERSED AND REMANDED

*Jacob Oppenheimer* for appellant.

(1)   (a)   Whether a contract purporting to be
based upon correspondence was or was not actually con-
summated is a question for the court and not for the
jury.   Wire Mfg. Co. v. Broderick, 12 Mo. App. 378;
Botkin v. McEntire, 81 Mo. 557; Whedon v. Ames, 28
Mo. App. 243; James v. Bottle Co., 69 Mo. App. 207.
(b)   Where a contractual right once comes into exist-
ence, mere letters or notices from one of the parties can-
not change or affect the status of the parties under the
contract.   Welsh v. Guaranty Fund Life Society, 81 Mo.
App. 37.   There must be a new and independent arrange-
ment actually assented to.   Moomaw v. Emerson, 80 Mo.
App. 318; Sutter v. Roeder, 149 Mo. 297.   (2)   An in-
struction is error which assumes the existence of con-
troverted facts.   Wright v. Fonda & Higgins, 44 Mo.
App. 634; Shoe Co. v. Hilig, 70 Mo. App. 301; Harvey

v. Slater, 71 Mo. App. 68. (3) There can be no recovery upon an implied contract, unless under circumstances where a promise may be, in fact, implied. Bank v. Aull, 80 Mo. 199; Mansur v. Murphy, 49 Mo. App. 266; Medlin v. Brooks, 9 Mo. 109; 15 Am. and Eng. Ency. of Law, pp. 1078, 1079; Zottman v. San Francisco, 81 Am. Dec. 96; Lawson on Contracts .(2 Ed.), sec. 43, and cases cited. And where there is an express contract the law will not raise an implied promise. Clark v. Kane, 37 Mo. App. 258; Houck v. Bridwell, 28 Mo. App. 644; Scuts v. Taylor, 20 Mo. App. 166; 15 Am. and Eng. Ency. of Law, pp. 1078, 1079; Bank v. Packing Co., 4 Mo. App. 215. In any event, whether or not there may be implied a contract in fact to pay the reasonable value for the alleged use of plans and specifications is, upon a proper showing, a question for the jury. Lillard v. Wilson, 178 Mo. 145; Whaley v. Peake, 49 Mo. 80; Hart v. Hart's Adm'r, 41 Mo. 441. Here the attempted use of the plans and specifications after breach of contract not only could not raise an implied promise to pay therefor, but could not even constitute a waiver on the part of appellant to sue for the breach. The waiver must be voluntarily and on a consideration. Fairbanks, Morse & Co. v. Baskett, 98 Mo. App. 64; Cox v. Long, 69 N. C. 7; 22 Am. and Eng. Ency. of Law, pp. 1095, 1097.

*W. B. Homer* for respondents.

The court should have instructed the jury that appellant had failed to prove the written contract alleged in the answer. There was no error in the court giving for appellant instruction numbered 4. Williams v. Porter, 51 Mo. 443; Griffith v. Gilliam, 31 Mo. App. 33; Fulkerson v. Lynn, 64 Mo. App. 653; Fairbanks v. Baskett, 98 Mo. App. 53; Steam Laundry Co. v. Ins. Co., 151 Mo. 90.

GOODE, J.—Action to recover fees alleged to be due plaintiffs as architects for the preparation of plans and specifications for a structure to be erected on the Pike, a street in the Louisiana Purchase Exposition grounds in St. Louis. Rodgers, the defendant, is the owner of a horse trained to do acts exhibiting unusual intelligence. At the time the contract in controversy was made he intended to exhibit the horse at the Louisiana Purchase Exposition or World's Fair, held in St. Louis in 1904, and wished to erect a building for the purpose. Defendants' notion of the kind of building which would be appropriate, was a colossal horse more than a hundred feet high and of other dimensions on the same scale, to be constructed mainly of steel and wood. This structure was to have an audience room or theatre inside the body of the horse, where the exhibition would be given, moving stairways, elevators, various other conveniences and a highly ornamented entrance and exterior. Defendant contemplated an outlay of from one hundred to one hundred and twenty thousand dollars. Having met one of the plaintiffs at the Charleston Exposition he consulted said plaintiff on arriving in St. Louis and was referred by him to another member of the firm, Mr. Weatherwax, with whom the negotiation for the employment of plaintiffs occurred. Defendant unfolded his notion of the building to Mr. Weatherwax and, according to the testimony of the latter, was told such a structure probably could be erected for $75,000, though plaintiffs would not guarantee that it could be. This amount was discussed, because, after defendant had talked with other concessionaries who were intending to exhibit on the Pike, he changed his intention regarding the amount to be invested in the building. Weatherwax and Rodgers came to an agreement by which the plaintiffs were to prepare plans and specifications for the proposed structure and superintend the erection of it for a fee of two thousand dollars. Their

agreement was oral, but it was understood Weatherwax should prepare a written instrument containing the stipulated terms and send the instrument to Rodgers in New York, whither he was going, to be signed. The negotiation was finished July 26, 1903, and Rodgers immediately departed for New York. The correspondence between the parties shows plaintiffs set about preparing the plans and specifications at once and continued to work on them until they were completed. This happened in due time; that is, by September 1st, when, according to the agreement, the plans were to be ready for submission to contractors who might wish to bid for the erection of the structure. It was the intention of Rodgers to be in St. Louis by that date and attend to the letting of bids, but he had an exhibition in progress in Boston which required his attention and prevented him from coming to St. Louis until November. For this reason bids for the work were not received until about the middle of November, when all the bids submitted were for a price in excess of $75,000. There was evidence to show that between the first of September and November, the price of labor and material for use in the erection of buildings on the World's Fair grounds, advanced considerably on account of strikes by labor unions and other causes, and that if the contract for the erection of defendant's house had been let September 1st, as was intended, it could have been built at a cost of no more than $75,000. When defendant found he could not come to St. Louis in September, he had the plans and specifications sent to him and wrote several times that he was trying to arrange with eastern capitalists to build a structure to cost not less than one hundred thousand dollars. Weatherwax neglected to have a writing prepared setting forth the agreement and on August 10th, Rodgers wrote plaintiffs a letter in which he stated that he engaged them as architects to prepare the plans and specifications for the contemplated

building. The letter went into details about the different parts of the colossal horse for which the plans were to be drawn; stating the form of entrance, the living rooms and theatre desired, that there should be a roof garden on top, and various other particulars, and saying the entire cost, including furnishings, should not exceed $75,000. The letter stated plaintiffs' fee was to be two thousand dollars, payable in four installments of five hundred dollars each, the first to fall due on the passing of the contract "by Mr. Gregg and his committee on plans and signing of the contract." The second installment was payable when finished plans, drawings and color sketches were ready and the other two installments in thirty and sixty days thereafter. No reply was made to this letter, nor was it alluded to in the subsequent correspondence between the parties. Defendant finally abandoned building the structure for which the plans were prepared and having refused to pay plaintiffs for their work, this action was brought to recover *quantum meruit* the value of their services. A verdict for $1,400 was returned in plaintiff's favor and judgment having been entered accordingly, this appeal was taken.

The errors assigned relate to rulings on the instructions presented by the parties, which are too numerous to be quoted at length, but will be referred to, as far as seems necessary, in reviewing the legal propositions involved. The main defense is that no contract was made prior to the letter of August 10th, and that as said letter recited certain terms and was received by plaintiffs and left unanswered, it was, in effect, assented to by them as the contract between the parties and, therefore, plaintiffs could not recover except by proving the plans and specifications prepared by them were in accordance with its terms. In instructing the jury the court below did not assume that a contract either had or had not been made orally on July 26th, or that

the letter of August 10th, constituted the true contract between the parties.  In instructions given for both parties said letter was treated as not conclusive concerning the terms of the contract if the jury found from the subsequent correspondence, that both parties did not regard it as binding or its terms "were not strictly adhered to by both parties."  Though plaintiffs requested instructions of that tenor, they did so only after the court had given instructions for defendant and had rejected the theory of plaintiffs' counsel that as the letter was not signed by plaintiffs, or its terms formally accepted, it did not express the agreement of the parties but that the contract on which the case turned was entered into orally on July 26th.  The testimony shows without conflict or inconsistency, that Weatherwax and Rodgers definitely agreed on the date last named, that plaintiffs were to prepare plans and specifications for the contemplated building and superintend the erection of it for a fee of two thousand dollars.  Rodgers told Weatherwax, in a general way, the kind of building he wanted and left it to plaintiffs to work out the details.  Weatherwax and Rodgers both swore a contract was reached on July 26th.  Two or three previous conversations occurred, but the affair was concluded on said day. Weatherwax testified as follows:

"When Mr. Rodgers came in to see me we closed up the deal for $2,000; that is, Mr. Rodgers stated to me that he would pay me $2,000 to get up these drawings and specifications and take estimates on it and assist him in getting them passed through the Department of Works, Mr. Gregg's department, rather. . . .

"We were to superintend the building."

Rodgers' version of what transpired between him and Weatherwax was given in these words:

"We had talked over a price and had agreed upon a price of $2,000, which was to complete the entire thing, so that would be the total amount of investment in my

show, and the only additional thing I expected to bring into it was my horse Jim Key. I asked him if he would draw up a contract in proper form and send it on to me, and that I was anxious to get the thing settled as quick as possible; that I was going back to New York and wanted to get back here by the first of September, so as to settle this matter, because I had to open up in October an exposition which I was running in Boston that I was interested in. That was the result of my conversation with Mr. Weatherwax the last time I saw him and the time I closed the deal. . . .

"My impression is we were alone, no one there but Mr. Weatherwax and myself, and Mr. Weatherwax and I agreed at that price (i. e. $2,000) and the understanding I had with Mr. Weatherwax was that I was to have a complete building."

Nothing in the evidence indicates that either of the parties intended the execution of a written instrument should be a condition precedent to the taking effect of their contract. This being true, the intention to put the agreement made on July 26th into writing, did not hinder the contract from being in force from the time it was made. [Allen v. Chouteau, 102 Mo 309, 322, 14 S.W. 869.] The opinion of the Supreme Court of this State in the case just cited dealt with facts similar to those before us and declared the law to be that "a party making a proposal, or an acceptance of one, may make it a condition that the contract be reduced to writing signed by both parties. But it is equally clear that the proposal or acceptance must be expressed in such a way as to show that such a condition is intended." The question before us has called often for decision by courts of last resort and the doctrine taught by all the cases is that if an oral agreement is reached, it takes effect immediately as a contract, though the parties understand it shall be put into a formal writing, unless one of the conditions agreed to orally is for the agreement to remain ineffect-

ive until the writing is executed. [Wilson v. Board of Education, 63 Mo. 107; Riggins v. Railroad, 73 Mo. 598, 604; Green v. Cole, 103 Mo. 70, 76, 15 S .W. 317; Methudy v. Ross, 10 Mo. App. 101; Broome v. Wright, 15 Mo. App. 406.] These cases presented facts in no material respect different from this one, so far as the point in hand is concerned. The testimony of both Rodgers and Weatherwax and the conduct of the parties, show the agreement for plaintiffs' services was understood to be in effect from July 26th. Plaintiffs began work immediately and wrote letters about what they were doing to the defendant, who replied. We hold the contract of employment, whatever its terms, was an oral one and made on the 26th day of July, 1903, instead of by the letter of August 10th. Nevertheless, said letter having been written by defendant and retained by plaintiffs, was competent evidence of what the previous agreement was. It is part of the evidence bearing on that issue. If it contains terms not in the previous agreement between the parties, it is not the contract, but as plaintiffs failed to challenge any of its contents, it is some evidence of what the original terms were. Plaintiffs swore there was no agreement that the structure for which they were to prepare plans and specifications should not cost more than $75,000, and that the cost of furnishing the structure was not considered in discussing the expense of building according to the plans they were to prepare. Defendant testified to the contrary on both those questions. With the evidence thus contradictory, it devolved on the jury to find what the agreement was from all the facts and circumstances in proof, including the letter of August 10th. Plaintiffs were bound to perform substantially the contract as made, and if their plans and specifications did not come within the terms, they are not entitled to recover unless the defendant waived the deviation, either expressly or by conduct. [Meyer v. Christopher, 176 Mo. 580, 75 S. W. 750; Ross-Langford v.

Ins. Co., 97 Mo. App. 79, 71 S. W. 720.] One instruction was that though the jury found plaintiffs agreed to make plans for a structure to cost not more than $75,-000, but further found defendant, instead of rejecting the plans actually prepared on learning it would cost more than that amount to build in accordance with them, made use of them in endeavoring to erect a building at a sum in excess of $75,000, plaintiffs were entitled to recover the value of the plans and specifications. No doubt that instruction referred to statements in the letters of defendant that he was trying to induce eastern capitalists to invest with him in a building to cost one hundred thousand dollars. We think the instruction was erroneous in laying undue stress upon a single circumstance in evidence. The jury might have found from said circumstance alone, or from it and other facts in proof, that if it was agreed plans should be drawn for a house to cost no more than a certain price and this stipulation was not complied with by plaintiffs, the defendant waived the breach and accepted the plans as drawn. Nevertheless, the use defendant made of the plans was not conclusive in favor of a waiver, but was compatible with the theory that he would accept them only in the event of being able to enlist the requisite capital to build in accordance with them. Selecting one inconclusive fact and predicating a waiver on it, tended to give it undue importance in the minds of the jury. [Hackman v. McGuire, 20 Mo. App. 286; State v. Jackson, 105 Mo. 196, 15 S. W. 333, 16 S. W. 829.] Another instruction was that if it was agreed the plans were to be drawn for a building to cost not more than $75,000, and the plans were drawn for a building in excess of said sum, yet if plaintiffs were ready and willing to make changes in the plans so that a building could be erected in accordance with them for less than $75,000, and defendant refused to permit them to make such changes,

121 App—12

plaintiffs were entitled to the value of their services. We know of no theory on which that charge can be upheld. If plaintiffs agreed to prepare plans by September first for a house of maximum cost and failed to keep their contract, defendant was under no obligation to permit them to prepare other plans, either entirely new or consisting of those already drawn but materially altered. This instruction, in effect, exonerated plaintiffs from failure to comply with their undertaking and gave them a right not given by their contract, to prepare a second set of plans after September first if those first prepared violated the agreement. The bids for the structure for which plaintiffs drew designs were much in excess of $75,000; and to bring the structure within that price would have required more than slight changes of details. Plaintiffs' right to recover depended on showing either that the plans they drew, and substantially as drawn, could have been followed at an expense not above $75,000, if bids had been taken when contemplated, or that they did not agree to draw plans for a house, the cost of which would not exceed said sum.

The judgment is reversed and the cause remanded. All concur.