EDWARD CONCANNON, Respondent, v. POINT MINING & MILLING CO., Appellant.

St. Louis Court of Appeals.	Submitted on Briefs March 6, 1911. Opinion filed March 21, 1911.

1. BROKERS: Commission: Construction of Contract. A contract stipulating that a broker is to receive "compensation or commission" on all "sales or shipments" made in his territory, whether directly made by him, or otherwise forwarded to, or directly made by, the principal, contemplates the payment of compensation or commission to the broker where he makes a sale himself, or where, irrespective of who made the sale, the principal ships into his territory; and, in order for him to recover commission, it would not be necessary for him to show an actual sale made, consummated by delivery, but it would be sufficient to show he had procured a purchaser ready, willing and able to buy.

2. APPELLATE PRACTICE: Conclusiveness of Finding. The trial court's findings of fact on the evidence are conclusive on appeal.

3. BROKERS: Commission: Completed Sale: Sufficiency of Evidence. In an action by a broker for commission on the sale of goods, evidence *held* to show a sale, so far as the broker is concerned.

4. ———: ———: Oral Agreement for Purchase. In an action for commissions for sales of barite, where plaintiff brought the parties together, and they agreed upon terms and details, and

the vice-president and manager of the seller company wrote them out and sent the contract, as prepared by him, to plaintiff to have him procure the signature of the proposed buyer, which he did, and after eleven days the seller repudiated the contract because conditions had changed, plaintiff was entitled to commissions, although the contract was not written out at the time, but was left for a future date.

5. ———: ———: **Finding Purchaser.** A broker earns his commission when he finds and produces to the proposed seller one who is ready, willing and able to buy upon the terms upon which he is authorized to negotitate the sale, and, in case the owner is unable to complete the transaction by delivery, the law declares the sale complete so far as the broker is concerned.

6. **CONTRACTS: Oral Contract Subsequently Reduced to Writing: Time of Taking Effect.** If an oral agreement is reached, it takes effect immediately, although the parties understand it shall be put into formal writing, unless one of the conditions agreed to orally is that the agreement shall remain ineffective until the writing is executed.

Appeal from St. Louis City Circuit Court.—*Hon. Geo. H. Williams,* Judge.

·AFFIRMED.

*Walter H. Nohl* for appellant.

(1)  Plaintiff's right to recover rests upon the meaning of the clause "compensation or commission" agreed upon is fifty cents per ton, this commission to apply on all sales or shipments.   Fries v. Merck, 167 N. Y. 445; Creveling v. Wood, 95 Pa. 152; State v. Boucher, 59 Wis. 477; Hamilton v. Steck, 5 N. Y. Sup. 831.  (2)  Where the contract is of a doubtful meaning, the construction of it by the parties, will be adopted by the court.   Laing v. Holmes, 93 Mo. App. 231; Ireland v. Spickard, 95 Mo. App. 53; St. Louis v. Gas Co., 155 Mo. 1; Meyer v. Christopher, 176 Mo. 580. (3)  There was no sale effected between defendant and F. Hammar Paint Co., 7 Am. and Eng. Ency. of Law, (2 Ed.), p. 140; Green v. Cole, 103 Mo. 70; Methudy v. Ross, 81 Mo. 481 and 10 Mo. App. 101; Eads v. City of Carondelet, 42 Mo. 113.

*S. T. G. Smith* for respondent.

Where an agent is employed to make a sale and he obtains a purchaser willing to buy on the terms his principal has fixed, the agent cannot be beaten out of his commissions by the failure or refusal of his principal to carry out the contract.   Brown v. Smith, 113 Mo. App. 59; Bailey v. Chapman, 41 Mo. 536; Real Estate Co. v. Ruhlmon, 68 Mo. App. 503; Goss v. Stevens, 32 Minn. 474; Pope v. Caddell, 102 S. W. 327; Abel v. Nelson, 104 N. Y. Supp. 362; Shinn v. Haines, 21 N. J. Law 340; Kelly v. Phelps, 57 Wis. 425; Goodson v. Embelton, 106 Mo. App. 82; Magill v. Stoddard, 70 Wis. 79; Brown v. Wilson, 98 Iowa 316; Warren v. Booth, 81 Miss. 272.

REYNOLDS, P. J.—Plaintiff, respondent here, was a salesman for the appellant company for the sale of barite (a mineral commonly and commercially called barites), in certain territory named, including Missouri, the contract of agency being for a term of three years, commencing July 1, 1904, the defendant's works and principal office being located at Mineral Point, Washington county, this state.   The only clauses of the contract here involved and necessary to notice are as follows:

"Compensation or commission agreed upon is fifty cents per ton, this commission to apply on all sales or shipments made in the above specified territory, whether made direct by the said E. D. Concannon, or otherwise forwarded to or made direct by the said Point Mining & Milling Co.   Commissions to be paid every sixty days.

"It is also understood that the commission of 50 cents per ton is to be net selling cost to the Point Mining & Milling Company, all expenses for traveling or otherwise, incidental to sales to be borne by the said E. D. Concannon.

"All contracts and sales made under this agreement, shall be subject to and contingent upon the approval of the Point Mining & Milling Co."

Plaintiff claimed that acting under the above contract he had made a sale of 2000 tons of barite to the Hammar Paint Company, on December 15, 1906, and was entitled to his commission, amounting to $1000, and that not having been paid, he brought this action.

Defendant's answer, admitting the contract, after denying every other allegation, avers that whatever negotiations were had with the Hammer Paint Company by defendant or in its behalf were never reduced to a contract for the sale of the mineral and that in fact no mineral was ever sold and delivered or shipped pursuant to negotiations and that by reason thereof it did not become and is not liable to plaintiff for the payment of any amount whatsoever.

The case was tried before the court, a jury being waived. At the trial there was evidence tending to show that late in the afternoon of December 15, 1906, a Mr. Becker, representing the Becker-Moore Paint Company, and interested with the Hammer Paint Company in the matter, met plaintiff and a Mr. Buddecke, president of defendant company, in the office of the Hammer Paint Company in St. Louis. It appears that on the day previous, that is, on December 14th, plaintiff had written to defendant at its Mineral Point office, advising it that the Becker-Moore Paint Company and the Hammer Paint Company would make contracts with dealers for such amounts of barite as they would require for the coming year, and that Mr. Becker, representing the former company, had advised plaintiff late that afternoon that they intended closing contracts the following day, Saturday; that Mr. Becker would have all his prices in hand Saturday morning and "says he does not intend to delay longer in closing." That is, as we understand it, the Becker-Moore Company and the Hammer Paint Company were in the market to buy for the ensuing

year, and intended closing contracts with such dealers as would give them the best terms, and that they intended closing up the matter that day. Plaintiff further advised defendant in his letter that he had told Mr. Becker that he would write defendant and request it to wire him (Concannon) the figure it would make for the contract. Plaintiff also stated in the letter that Mr. Becker said that if defendant could not quote him (Concannon) Saturday, he (Becker) intended closing without prices from defendant. That is, they would give the contract to such other dealers as were then prepared to close with them. Plaintiff therefore in this letter, requests defendant to wire him on receipt and that he hopes the prices of defendant will secure the business. In response to this letter Mr. Macklind, vice-president of defendant company, telephoned plaintiff that Mr. Buddecke, the president, and he were together in St. Louis, and that they had thought the matter over, were ready to make prices to secure the Hammar contract, and would come to plaintiff's office to talk about it, plaintiff's office being in St. Louis. Accordingly, on that Saturday morning, December 15th, Messrs. Macklind and Buddecke visited plaintiff at his office and Mr. Macklind said they were now prepared to try to get the contract with Hammar and Becker and named $14.75 a ton, in car lots, f. o. b. St. Louis, as the price. Whereupon plaintiff telephoned Mr. Becker and arranged a meeting for that Saturday afternoon at four o'clock at Mr. Becker's office in St. Louis. Mr. Macklind, however, had to return to Mineral Point and plaintiff and Mr. Buddecke saw Mr. Becker, who said he wanted bedrock prices for the next year's requirements for his company and the Hammar Company. Mr. Buddecke said the best price of his company was $14.75 a ton, carload lots, f. o. b. St. Louis. They then discussed the question of cash discountes, dates of payments, etc., and Mr. Becker said he could not close the contract on account of the great advance in the price without seeing Mr. Hammar.

Thereupon about half past five in the afternoon of that
Saturday, Mr. Buddecke, Mr. Becker, plaintiff and Mr.
Hammer, the latter representing the Hammar Paint
Company, met in Mr. Hammer's office in St. Louis, Mr.
Hammar being president of the F. Hammar Paint Com-
pany, and all of the being together the price was named
as above, and terms, question of discounting paper, etc.,
were discussed, and while Mr. Hammar complained that
the rise in the price was very material, Mr. Buddecke
stated that was his price.    Mr. Hammar said: "You
have got me, and so we will have to make the price just
what you say the price must be."    Whereupon Mr. Ham-
mar told Mr. Buddecke to sit down and write out the
agreement and they would sign it up.    Mr. Hammar
then looked at his watch, and saying that as it was half
past six, he was obliged to go to meet an engagement,
and would not have time to write the paper up then,
Mr. Buddecke said that he would go and telephone it
into the works, located, as stated, at Mineral Point,
about sixty miles south of St. Louis.    The meeting broke
up and Mr. Buddecke and plaintiff went to plaintiff's
office and wrote out several telegrams, but on suggestion
of plaintiff, that the next day would be Sunday, and
that he might as well communicate with his office by
mail, Mr. Buddecke said he would "long distance" it
into the office the next morning.    Mr. Buddecke then
left Concannon, he and Buddecke "both feeling good
about the contract," and the latter left plaintiff, saying
he was going to start for Las Vegas the next day, Sun-
day.    On Monday morning, the 17th, plaintiff received
copies of the contract by mail from the defendant com-
pany, in triplicate, and received with them a letter dated
the 16th, written from the defendant company's office
at Mineral Point, addressed to him, signed in the name
of the company defendant by Mr. Macklind, as manager,
in which letter it was stated that in compliance with
Mr. Buddecke's request by telephone that day, the com-
pany defendant was therewith mailing plaintiff draft

of contract for the Hammar and Becker-Moore Companies in triplicate, ready for their signature. The letter continues: "Kindly have same executed and return to us, at which time we will execute two copies and return to you for delivery to them. The contract is drawn on identical lines as the one of last year, excepting that we have made as the minimum tonnage to be used 2000 tons, eliminated the No. 2 grade of material, and inserted the revised price of $14.75 per ton f. o. b. cars St. Louis. Kindly try and have the papers returned to us as soon as possible. We would also ask that you take up the matter of contract with the . . . and other St. Louis parties at your earliest convenience, as we wish to know about what business we will secure in St. Louis this year." It is to be remembered that Mr. Macklind was at that time vice-president and general manager for defendant. Plaintiff took the contract to the office of the Hammar Paint Company and it was signed in triplicate by the president of that company, in the name of the company, and delivered by him to plaintiff, who took the signed triplicates and returned them with a letter to defendant the same day, that is December 17th. The letter of transmittal requested the defendant company to add the date, affix the signature of the defendant company and send back to plaintiff two copies so that he could deliver one to the Hammar Paint Company and one to the Becker-Moore Paint Company. The letter concludes: "To say that Hammar gave me to-day his opinion on this deal, would be putting it mildly." Eleven days afterward, that is to say, December 28th, plaintiff received a letter, signed in the name of defendant company by Mr. Stroop, its secretary, in which, referring to the matter of the contract, the secretary states that since the matter of the contract had been talked over between Mr. Buddecke and plaintiff and the buyers, several conditions had developed that rendered acceptance by defendant of the contract as drawn impossible.

The letter then goes into a long detail of conditions that were claimed to have arisen which made the contract no longer acceptable to defendant. On receipt of this letter plaintiff took the contracts back to the Hammar Paint Company and left them there, showing Mr. Hammar the letter. Plaintiff testified that no goods were ever shipped under the contract.

There is practically no dispute of this testimony on any material matter connected with it, and in the view we take of the case we consider it only necessary to set out the resume as given above. No declarations of law were asked or given, and at the conclusion of the testimony the court found for plaintiff and entered up judgment in his favor for the amount in suit. In due time defendant filed its motion for a new trial, assigning that the judgment was contrary to the evidence, against the weight of the evidence and against the law under the evidence; that it is for the wrong party; that the court erred in admitting incompetent, irrelevant and immaterial evidence offered by plaintiff and erred in rejecting competent, relevant and material evidence offered by defendant. This motion being overruled and exceptions saved, defendant in due time perfected an appeal to this court.

The learned counsel for defendant here makes three points as grounds for a reversal of the judgment. First. "Plaintiff's right to recover rests upon the meaning of the clause 'Compensation or commission agreed upon is fifty cents per ton, this commission to apply on all sales or shipments.'" Second. "Where the contract is of a doubtful meaning, the construction of it by the parties, will be adopted by the court." Third. "There was no sale effected between defendant and F. Hammar Paint Company."

It will be observed that there is no assignment of error as to the admission or exclusion of testimony, and no pretense of a plea of the Statute of Frauds (R. S. 1909, sec. 2784), either by answer or at the trial, nor is

any point here made that this case comes within the operation of that statute. What, we determine, therefore, has no relation whatever to any question which might arise if a plea of the statute had been or could have been made. We refer to this out of abundant caution, in order that there can be no pretense that we have decided on, or in any manner whatsoever considered, that statute in connection with this case.

The case is very simple and in a very narrow compass. The argument which the learned counsel for appellant addresses to us as bearing on the first point of his contention, is that the word "or," between "compensation" and "commission," and between "sales" and "shipment," in the first clause quoted, as used, is a conjunction, connecting equivalent terms; that as there used, it is used in the sense of "to-wit"; and that the word "sale," as there used, means an actual sale, consummated by delivery, and not a mere sale in a commercial sense. The learned trial court did not take this view of the case either on the testimony or as a matter of law. We agree with it in that conclusion. Considering the contract as an entirety, it is very clear that it contemplates the payment of compensation or a commission to plaintiff in two events: first, if he made a sale himself; second, irrespective of the fact as to who made a sale, if defendant shipped into the territory included in plaintiff's contract. In other words, the contract gives plaintiff an exclusive control over sales of defendant's product in the territory specified, during the term of the contract. If he made sales in it himself he received his commissions; if defendant by itself, or through any other agency, effected sales in, and made shipments into, that territory, plaintiff received the benefit of it, evidently on the theory that whatever sales might be made of the material dealt in by defendant in that territory would be considered as having been made as the result of plaintiff's work in that territory.

In support of his second proposition learned coun-

sel contends that the testimony of all the witnesses, except the witness Becker, tended to show and was to the effect that commissions were only paid on goods shipped, and that that was the interpretation the parties themselves had put on the contract. The answer to this is as before—the learned trial court did not so construe the testimony.

The third proposition is based on the claim that there was no sale in fact. We might dispose of this as we have of the other two points by saying that the decision of the trial judge is also conclusive on this. But we have read over the testimony in the case, as abstracted by the learned counsel for appellant, and have arrived at the same conclusion as that arrived at by the learned trial judge. The plaintiff here had done all that he was obligated to do. He had brought the parties together; they had agreed upon the terms, upon minute details even, and the vice-president and manager of defendant, without any trouble whatever, apparently, as to what the terms were, had written them out, sending the contract as prepared by him to plaintiff to have him procure the signature of the proposed buyer. That the contract as submitted was signed by the proposed buyer shows conclusively that as written it was as agreed upon between the parties. On being signed by the buyer it was transmitted back to the defendant corporation for its signature and the exchange of the papers between the parties. After a delay of eleven days defendant's secretary, acting for defendant, repudiated the whole matter, not because it was not written out as agreed upon, but because conditions of the market had changed. That is, it was no longer profitable to defendant. That is not fair dealing toward plaintiff. It is obvious that plaintiff secured the customer over other competitors. The proposed buyers were in the market to close with that seller who would grant the best terms. By this prompt action, plaintiff shut out all competitors and secured the sale to his principal on terms to which

all parties acceded. Plaintiff had done all he was obligated to do under his contract as sales agent for his principal. He was entitled to his commission. The fact that the contract was not actually written out at the time and that the mere act of reducing it to writing was left to a future time does not militate against plaintiff's claim. Learned counsel for appellant cite us to the case of Green v. Cole, 103 Mo. 70, 15 S. W. 317. That decision is against him. Furthermore it covers this case so completely that we venture to quote from it as decisive of this case. There our Supreme Court, Judge BLACK, delivering the opinion, says (l. c. 76): "It is a well-settled principle of law that to constitute a contract the minds of the parties must assent to the same thing in the same sense. There must be a mutual assent to all of the propositions; for so long as any matter forming an element of the contract is left open, the contract is not complete. Though the terms of the contract may all be agreed upon, still if the parties make it a condition to the existence of a contract that the terms agreed upon be reduced to writing and signed by them, there is no contract until this is done. [1 Addison on Contracts (Morgan's Ed.), p. 37.] On the other hand, it is well-settled law that where the parties have assented to all the terms of the contract, the mere reference to a future contract in writing does not negative the existence of a present contract. In other words if the parties make an agreement which they intend shall be binding from the time it is made, effect will be given to it from that time, though they intend it shall be superseded by a more formal written agreement." In support of this Judge BLACK has cited many cases, not only from our own courts, but accepted authority from courts of other jurisdictions. That all the parties, when they separated that Saturday, thought they had contracted a sale and acted on that conclusion is too clear for argument. Plaintiff and Mr. Buddecke, president of defendant, congratulated each other over the accomplished

deal. The vice-president, in his letter sending the papers back to plaintiff for signature, accepted it as a completed transaction and instructed plaintiff to go ahead and secure other like contracts. The same principle applies to contracts of this character as to contracts for the sale of real estate. In the latter class it is the well-settled law of this state that a real estate broker earns his commission when he finds and produces to the proposed seller one who is ready, able and willing to buy upon the terms upon which the broker is authorized to negotiate the sale, and in case the owner refuses to complete the transaction by delivery, the law declares the sale complete so far as the broker is concerned. His commissions are then due him. The performance of the contract upon his part was then complete and the sale consummated so far as the agent was concerned. He had done all that he had contracted to do and all that the law requires. It was not only out of his power to make delivery but he was under no obligation to do so; he could do no more than he had done. He earned his commission when he brought the parties together, and they had agreed to the sale and purchase. [Brown v. Smith, 113 Mo. App. 59, 87 S. W. 556, and authorities there cited.] As was said in Hudson v. Rodgers, 121 Mo. App. 168, 98 S. W. 778, nothing in the evidence in this case indicates that either of the parties to the transaction intended that the execution of the written contract should be a condition precedent to the taking effect of their contract. By these and many other decisions of our courts, the doctrine is announced and may be taken as the accepted and settled law of this state, that if an oral agreement is reached it takes effect immediately as a contract, though the parties understand it shall be put into a formal writing, unless one of the conditions agreed to orally is for the agreement to remain ineffective until the writing is executed. In the case at bar there is no pretense whatever that there was any agreement entered into between the parties, to

the effect that the bargain was to await the execution of the papers. They all regarded it as closed when they separated that Saturday evening.

The judgment of the circuit court is affirmed. *Nortoni* and *Caulfield, JJ.,* concur.