Neal J. CAMPBELL, (Plaintiff) Appellant,

v.

EVENS & HOWARD SEWER PIPE COM-
PANY, a Corporation, (Defendant)
Respondent.

No. 29295.

St. Louis Court of Appeals.

Missouri.

Jan. 17, 1956.

Blumenfeld & Abrams, Selden Blumenfeld, St. Louis, for appellant.

Stockham, Roth, Buder & Martin, Benjamin Roth, St. Louis, for respondent.

HOUSER, Commissioner.

This is an action by Neal J. Campbell, a professional architect, to recover the reasonable value of services rendered by him in engineering, planning, drafting plans and specifications and procuring bids and estimates for the erection and construction of a dryer building for a sewer pipe company. A trial jury awarded plaintiff $6,500 but the trial judge set aside the verdict and judgment and granted a new trial. Plaintiff has appealed from that order.

The first question is whether the trial judge committed error in granting a new trial "on the ground that the court erred in refusing Defendant's Instruction A." That instruction directed a verdict for defendant upon a finding that it employed plaintiff to draw plans for a dryer building the construction of which would not cost over $200,000 but that, constructed according to plaintiff's plans, the building would have cost substantially more than $200,000. This instruction embodies the well established rule that where an architect is employed to prepare plans for a building to cost not more than a certain sum the architect is not entitled to compensation unless the building can be constructed for the stipulated amount. Hellmuth v. Benoist, 144 Mo.App. 695, 129 S.W. 257; Kurfiss v. Martin, 130 Mo.App. 469, 110 S.W. 32; Hudson v. Rodgers, 121 Mo.App. 168, 98 S.W. 778; Cann v. Rector, Wardens & Vestrymen of Church of Redeemer, 111 Mo. App. 164, 85 S.W. 994; Maack v. Schneider, 57 Mo.App. 431; 6 C.J.S., Architects, § 14b, p. 310; 5 C.J., Architects, § 13, p. 262; 3 Am.Jur., Architects, § 15; Annotation 127 A.L.R. 410 et seq. Appellant claims that Instruction A was properly refused because it was not supported by any evidence; that the giving of the instruction would have constituted reversible error.

The following facts were undisputed: Defendant company desired to convert from the traditional gravity flow system of drying freshly molded clay pipe to a new system of drying by forced air. Ultimately eight new dryer building units would be required. Plaintiff was commissioned by Oscar E. Buder, defendant's duly authorized president, to draw plans for a two-unit dryer building. The contract was oral and informal. There was no discussion of fees. Plaintiff and his associates prepared a set of plans and specifications which, from the standpoint of engineering, design and practicality for the intended use, were satisfactory to defendant. The estimated cost of construction of a building housing two dryer units, according to plaintiff's plans and specifications, was $190,000. Upon learning of the cost estimate defendant abandoned the undertaking and did not use plaintiff's plans.

The lack of agreement on the facts, indeed, the fact issue upon which the testimony of the parties was in diametric opposition, related to the question whether the contract included a limitation on the cost of the building. Plaintiff testified that Mr. Buder did not place any limit as to the ultimate cost of construction of the project he was employed to engineer and design, or indicate the amount of money defendant had available to spend on the proposed dry-

er buildings; that at no time during any of the conversations with Mr. Buder did the latter tell him that the company had placed a limit of $200,000 on the project. In direct contradiction Mr. Buder testified that during his initial conversation with plaintiff in connection with this transaction he told plaintiff that he was allowing $200,000 for four dryers; that plaintiff knew defendant's requirements and was told that defendant wanted the best, most economical and efficient plant possible, "provided it could be built within the $200,000, which was my limitation. * * * I told him $200,000 for four buildings * * *." On cross-examination Mr. Buder testified as follows:

"Q. * * * You told him then that you wanted the four dryer buildings built at a cost not to exceed $200,000? A. Absolutely.

"Q. That's right? A. Yes."

On redirect examination this appears:

"Q. Mr. Buder, at this first conference after you had shown Mr. Campbell this sketch and, as you have testified, told him of the limitation of funds available, what instructions did you then give him concerning the work that he was to do? * * *. A. Well, I told him to go ahead and prepare the dryers for us in keeping with this limitation of $200,000."

From this recital it is plain to see that there was substantial record evidence of the fixing of a cost limitation amply sufficient to support the giving of Instruction A.

Appellant contends, however, that defendant was not entitled to Instruction A for the reason that it presented a theory of defense which had been abandoned and which is wholly inconsistent with the theory on which the case was tried. The philosophy of Instruction A is one of complete exoneration; that plaintiff was bound to perform the contract as made and if his plans and specifications did not come within its terms he was not entitled to recover; that, as expressed in Maack v. Schneider,

supra, 57 Mo.App. loc. cit. 432, " * * * one who buys one thing is not thereby bound to pay for another and different thing, * * *." Appellant argues that defendant did not try the case on the theory that it was entitled to be completely relieved of all liability but on the theory that, while it owed plaintiff something, its liability should be restricted to the reasonable value of plaintiff's services up to the time his investigation revealed that the building could not be constructed within the price limitation, upon the determination of which plaintiff should communicate that information to defendant and proceed further only if permitted to do so. Appellant points to the testimony of the president of the company, Mr. Buder, who, when asked on cross-examination if he took the position that plaintiff should not be paid for his services, said: "We don't take that position. We want to pay him the reasonable value of his services." The entire record in this connection follows:

"Q. Do you take the position, Mr. Buder, that Mr. Campbell is not entitled to payment for his services?

"* * * * * *.

"A. I don't take that position, although you asked me at that time a matter of law and I told you as a matter of law I didn't think he was entitled to anything.

"Q. I asked you whether or not you take the position he is not entitled to payment for his services? A. We don't take that position. We want to pay him the reasonable value of his services."

Appellant also emphasizes the statement made by counsel for defendant at the time defendant offered to prove what the company did with respect to the construction of dryer buildings after terminating its relations with plaintiff, as follows:

"My theory is that the Campbell assignment was either to design it so it could be built, or if by investigation he found he couldn't then to drop it; that it was impossible to spend more for

building, therefore, if he had informed Mr. Buder earlier he would have paid him for his services investigating, what was done, and either drop the project and find another designer, or build one of the old type buildings, or something else; but, instead of doing that, he went on and didn't inform us. Therefore, it is relevant to the case to show that it was important that Mr. Buder be informed, because there were other persons he could obtain."

Appellant further relies upon the fact that defendant's counsel offered and the court gave Instruction 3, which restricted plaintiff's recovery to the services performed by plaintiff to the time when he determined that the building could not be constructed within the limitation fixed, unless plaintiff reported that fact to defendant and was permitted to continue thereafter. Appellant contends that the testimony of Mr. Buder and the statement of defendant's counsel above quoted constitute judicial admissions which are absolutely binding and conclusive upon defendant and that they preclude it from asserting an inconsistent and conflicting defense through the medium of Instruction A.

 Doubtless Mr. Buder's statement weakened the defense but it did not constitute a true admission, i. e., a formal act done in the course of judicial proceedings which waives or dispenses with the production of evidence, by conceding for the purposes of litigation that the proposition of fact alleged by the opponent is true. Maltz v. Jackoway-Katz Cap Co., 336 Mo. 1000, 82 S.W.2d 909, loc. cit. 917. It was not an admission of a *fact* destructive of the theory of the party making the statement, as in the cases of Steele v. Kansas City Southern R. Co., 265 Mo. 97, 175 S.W. 177, and De Lorme v. St. Louis Public Service Co., Mo. App., 61 S.W.2d 247, cited by appellant. It was not a final and binding judicial admis-

sion of liability, whether we label it an admission of law,[1] or of mixed law and fact,[2] or a quasi-admission.[3]

Turning to the statement of defendant's counsel, supra, it must be conceded that it was inconsistent with the theory of the defense as pleaded in the answer and, considered separate and apart from the balance of the record, it gives color to appellant's contention. The theory of defense adopted in the trial of a case, however, is not to be determined from one or two isolated, incongruous and inconclusive statements but rather from a consideration of the entire record. The pleadings, statements and arguments of counsel, evidence adduced, offers of proof and instructions offered and given are important guideposts. We are not persuaded that Mr. Buder's testimony and defendant's counsel's statement constitute an abandonment of defendant's theory of the right to complete exoneration, when the entire record of the trial is considered.

In the instant case defendant's answer set up a complete defense, namely, that plaintiff's attempted performance of his contract did not comply with the terms of his employment for the reason that he was employed to draw plans and procure estimates for the construction of four dryer buildings "with the express limitation that they were not to cost more than Fifty Thousand Dollars ($50,000.00) per building, and in his attempted performance plaintiff procured only an estimate for the construction of two dryer buildings, in the amount of Ninety-five Thousand Dollars ($95,000.00) each, which estimate was also grossly in excess of the reasonable value of such buildings, was totally unacceptable to defendant, and was therefore immediately rejected by defendant." The answer went on to deny that defendant was justly indebted to plaintiff for the sum prayed for and the answer closed with a prayer that defendant "go hence with its costs." Nei-

1. See Plemmons v. Pevely Dairy Co., Mo. App., 233 S.W.2d 426; Stockton v. Tester, Mo.App., 273 S.W.2d 783.

2. See Crockett v. Morrison, 11 Mo. 3.

3. Defined in Maltz v. Jackoway-Katz Cap Co., supra, as an item of evidence amounting to nothing more than a discrediting inconsistency but not in any sense final or conclusive.

ther the opening statement nor the closing argument of defendant's counsel was preserved of record but defendant's evidence throughout the entire trial, both before and after the statements of Mr. Buder and of defendant's counsel, bore out the theory of the answer, namely, that of complete exoneration. As pointed out by respondent, the facts concerning the limitation of cost were fully explored by both sides. Mr. Buder asserted on direct, cross and redirect examination that the limitation was imposed. Mr. Campbell and an associate engineer, Mr. Avis, who was present at many of the conferences, denied the limitation. These affirmations and denials of the limitation by both parties were made both before and after the statements in question. As in the construction of an admission, 31 C.J.S., Evidence, § 377, p. 1163, so in construing these statements the subsequent course of both parties on the trial may be considered. Counsel for plaintiff apparently did not regard the "judicial admissions" as binding and conclusive on the question of liability, for after defendant closed its case he recalled plaintiff in rebuttal and asked this question and received this answer:

"Q. At any time during the conversations that you had with Mr. Buder, at your office or any other place, prior to the time that you were employed to make up the plans for the dryer building, and at the time you were employed to make up the plans for the dryer, were you ever told that Evens & Howard Sewer Pipe Company had placed a limit of $200,000.00 on the project? A. No."

Instruction A, offered but refused, reaffirmed the theory of complete exoneration. Instruction A was refused by the trial court for the stated but erroneous reason that a limitation on the cost of the building would not entitle defendant to a verdict in the absence of an express agreement that there be no payment of fees if the cost exceeded the limitation. It was in that situation that defendant offered and the court gave Instruction 3 which merely minimized the amount plaintiff could recover, but which left defendant without any verdict-directing instruction. Considering the record as a whole we are convinced that defendant's theory was that it should be completely exonerated because of the cost limitation; that that theory was not voluntarily abandoned during the course of the trial and that the statements of Mr. Buder and defendant's counsel did not waive defendant's right to verdict-directing Instruction A which evidenced and expressed its theory of nonliability.

In plaintiff's main verdict-directing instruction there was a requirement that the jury find, as one of the elements essential to plaintiff's recovery, that plaintiff's plans and specifications were designed and engineered "in conformity with defendant's instructions to plaintiff." A defendant is entitled to a converse instruction on any one of the controverted elements essential to plaintiff's recovery. Dill v. Dallas County Farmers' Exchange No. 177, Mo.Sup., 267 S.W.2d 677; Conser v. Atchison, T. & S. F. Ry. Co., Mo.Sup., 266 S.W.2d 587, certiorari denied 348 U.S. 828, 75 S.Ct. 45, 99 L.Ed. 653; McCarty v. Milgram Food Stores, Inc., Mo.Sup., 252 S.W.2d 343. Instruction A presented defendant's converse theory that plaintiff failed to conform to defendant's instructions, and its refusal was error.

The order of the circuit court granting a new trial for error in refusing to give Instruction A was correct and it is the recommendation of the Commissioner that the order be affirmed.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The order of the circuit court is, accordingly, affirmed.

ANDERSON, P. J., MATTHES, J., and SAM C. BLAIR, Special Judge, concur.